### John Purdy v. The State.

No. 746.   Decided October 26, 1910.

**1.—Murder—Summons—Arrest—Self-Defense.**

Where, upon trial of murder, the defendant contended that the deceased had no right to legally undertake the arrest of the defendant, because he had not been legally summoned by the sheriff or constable to make such arrest, etc., and the evidence showed that the sheriff told the deceased that the officers were seeking the arrest of appellant and pointed out the latter while yet in flight, telling the deceased to tear down the fence and come across, which the latter did and joined the officers in pursuit of the defendant. Held, that this was a legal summons under the peculiar circumstances of the case, and the defendant could not plead self-defense for firing the first shot upon and killing deceased in the latter's attempt to arrest him.

**2.—Same—Charge of Court—Self-Defense.**

Where, upon the trial of murder, it was doubtful whether the evidence raised the issue of self-defense, it appearing that the defendant fired the first shot in resisting an arrest by the deceased; but the court nevertheless submitted the law of self-defense, there was no reversible error.

**3.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the evidence showed that the defendant knew that he was being pursued by the officers after firing upon one of them, and that the deceased was called upon to assist in the arrest of defendant and was killed by the defendant in resisting arrest, the issue of manslaughter was not raised and there was no reversible error in the court's failure to charge thereon.

Appeal from the District Court of Uvalde.    Tried below before the Hon. R. H. Burney.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Love & Williams* and *Jno. W. Hill,* for appellant.—On the question of the court's failure to affirmatively charge on self-defense: Reynolds v. State, 8 Texas Crim. App., 412; Greta v. State, 9 Texas Crim. App., 429; Jackson v. State, 15 Texas Crim. App., 84; White v. State, 18 Texas Crim. App., 57; Irvine v. State, 20 Texas Crim. App., 12; Bond v. State, 23 Texas Crim. App., 180; Morrison v. State, 37 Texas Crim. Rep., 601; Williford v. State, 38 Texas Crim. Rep., 393.

On the question of the court's charge on self-defense in being confused and misleading: O'Mealy v. State, 1 Texas Crim. App., 180; Boren v. State, 32 Texas Crim. Rep., 637; Earles v. State, 47 Texas Crim. Rep., 559, 94 S. W. Rep., 464.

On the question that the deceased was not a peace officer, and could not legally arrest the defendant: Alford v. State, 8 Texas Crim. App., 545; Staples v. State, 14 Texas Crim. App., 136; Russell v. State, 37 Texas Crim. App., 314; Brown v. Wallis, 101 S. W. Rep., 1068.

On the question of the court's failure to charge on manslaughter: Ledbetter v. State, 23 Texas Crim. App., 247; Meuly v. State, 26 Texas Crim. App., 274; Carter v. State, 30 Texas Crim. App., 551; Miller v. State, 32 Texas Crim. Rep., 319; Mundine v. State, 37 Texas Crim. Rep., 5; Earles v. State, 47 Texas Crim. Rep., 559, 94 S. W. Rep., 464; Miers v. State, 34 Texas Crim. Rep., 161.

The question of whether or not the deceased had a right to arrest the defendant is either a question of law or a question of fact. If a question of law the court should have charged the law in regard to it; and if a question of fact it should have been submitted as such:  Beckham v. State, 8 Texas Crim. App., 52; Moore v. State, 33 S. W. Rep., 980; Elliston v. State, 10 Texas Crim. App., 361; McLaughlin v. State, id., 340; Scott v. State, id., 112; Lynch v. State, 41 Texas Crim. Rep., 510, and cases last above cited.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This appeal is prosecuted from a conviction had in the District Court of Uvalde County on the 11th day of April of the present year, where the appellant was found guilty of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

The indictment upon which the conviction rested was originally returned in the District Court of Kerr County on the 6th of Janu-

ary, 1910. Thereafter on the 22d day of January, 1910, the case was, on change of venue, transferred to Uvalde County, where the trial was had. The appeal is prosecuted by counsel appointed by the court to conduct appellant's defense, and the questions raised in the record have been presented in written brief with great force and clearness. It is, with commendable candor, conceded by the learned counsel that except in the respects urged in the motion the trial by the court and jury was alike fair and impartial, and that unless the errors so assigned are grounds for reversal, that appellant is without complaint.

The nature of the questions are such as to require a somewhat detailed statement of the facts leading up to the killing. It is shown by the testimony of Henry Stout that he was constable and deputy sheriff in Kerr County, and that on or about the 4th day of September, 1909, he was sent for to go into the negro part of the town of Kerrville, where he was informed appellant was making trouble with one Polly Coleman. That his information came to him through one Hugh Wilson, who told him, to use the precise language of the witness, that "he (appellant) was raising hell with Polly." That when he got in sight of the house where he could see, Polly motioned for him, and that she and appellant were scuffling over something between them; that he went to where these persons were, on horseback, and when he was in about eighty yards of the house that appellant jerked a pistol away from Polly and shot at him; that he at once pulled up his horse and reached for his pistol when appellant shot again. That after firing the first shot appellant ran towards him about twenty steps, and that when his horse stopped appellant stooped down and shot again. It seems that both parties fired at each other several times, and that after the shooting appellant ran off through a pasture, and was going north the last time he saw him; that he then went and telephoned to Mr. Moore, the sheriff, to come out and assist him, advising him what occurred, and then went back to hunt appellant up; that as he went along he met Polly Coleman coming down the road of whom he inquired where appellant was; that this was about fifteen minutes after the transaction at the house. That about a mile from the courthouse he saw appellant get up near the cemetery, and at this time he was about two hundred yards from him, and that at the time it looked like appellant had started towards him. That at this time he saw Mr. Moore, the sheriff, who was a little further down and who could not see appellant from where he was; that he then started across a field when for the first time the deceased, Mr. M. F. Butler, came up on his left. In order to show the occasion of Mr. Butler being at this point it becomes necessary to recur to the testimony of Mr. Moore, the sheriff. He says that he had just got across the creek over a wire fence into a lane, and that at this time Mr. Butler came up behind him on a horse on the *outside*, and asked him what was the

matter; that he then told him they were after this negro, meaning appellant, and pointed him out crossing the field, and at the time appellant was running, and that he then told Mr. Butler to tear the fence down and come across, and that Mr. Butler tore it down, and that he, Moore, tore the other fence down, kicked the staples out, got the wire down, and that Butler passed over, being at the time on horseback. That Mr. Stout at this time was about a hundred yards above and was then joined by Butler, and he saw them both going across the field; that in the meantime he was watching the negro, who was still running towards the timber. Matters having progressed this far, it seems that for the first time Mr. Stout saw Butler, and that his attention was attracted to him by his whipping his horse when he looked around and saw him. He says further that he and Butler got pretty close together; that he was watching the fence to get a place to get through when deceased told him to come over there and they would take the fence down in the corner. It also appears that there was a Mr. Covert plowing in this field, who called to him, and that he was at the time knocking the fence down with a wrench or something, and that while crossing this field appellant and Covert, as the witness says, got together, and that he, Stout, motioned to Covert to stop appellant, holloed to him across the field; · that he does not know whether he understood it or not, but that he ran out in front of appellant; that when he and Butler got to where Covert had torn the fence down, they ran across the field to the next fence side by side, and jumped off their horses and commenced tearing the fence down, in which they finally succeeded. That Mr. Butler went over and ran up the mountain where they had last seen appellant; that when he last saw appellant he was running a little to their right along the mountain side, and that Mr. Butler ran right up to where he last saw appellant; that they did not go up the mountain together, but came together after going up on it, when he said to Mr. Butler that appellant had not come that way, and remarked, "I says we will go back down the hill; I will go down here and you go up there. Mr. Moore was coming across the field; we will catch him down there. I told Butler to be careful; I says, he might shoot you. He says, all right. That was the last time I spoke to Butler." He further states that after Mr. Butler left him that he went north about 250 yards to some more hills and watched around the hill, looking about when he heard two shots fired below, one almost immediately after the other. That he loped down to where this was, and the first he saw was Mr. Butler's horse standing, and when he got a little closer he saw Butler sitting up holding his side; that he did not see appellant for a little while, but that just as he got there Mr. Moore came up the hill when he saw him pick up appellant's sixshooter, and at this time saw appellant. Mr. Butler lived about an hour, but as far as the record discloses made no statement. That the whole transaction from the time of his

first visit to the house where the exchange of shots. took place to the time when Butler was fatally shot included possibly thirty minutes. It also appears from Mr. Stout's testimony that when he first got down town that he secured the aid of one Gregoria Ayala. Continuing the narrative of the sheriff, Mr. Moore, he says that after Mr. Stout and deceased left him, that he went across the field to where Mr. Covert was plowing and got a horse from him, and at this time appellant stopped on the hillside in the brush; that is, he saw him when he passed over the hill top; that Stout and Butler got almost to where defendant was, but they were tearing down the fence at the time he hid; that after they crossed the fence they went up the hill and passed right close to where appellant was when he went out of view; that soon after this appellant undertook to come around the hillside, and that just at this time Mr. Butler came back on top of the hill, horseback, and as he came in view of appellant, stopped, got off his horse, walked a few steps, and that he then saw the smoke from the brush where appellant had stopped, and just immediately afterwards Mr. Butler fired; that he then went on to where Butler was, who called to him that he was shot. It was also discovered that when found appellant was badly shot, and his leg broken near the middle of the thigh. It is testified to by Polly Coleman that just a short time before the killing, that she had heard Ella Jackson tell appellant that Mr. Butler was an officer. This, it may be stated, was the only testimony touching this question at all. She also testifies as follows: "Before Mr. Stout came out there, Purdy told me he was not going to be arrested; said Jack Moore and Henry Stout and Tom Butler neither one couldn't arrest him; that he was not going to be arrested." It is rendered certain from the evidence that appellant knew that Mr. Stout was an officer, and it is reasonably clear that he knew that Mr. Moore was an officer. It was further shown in the evidence quite conclusively, we think, that there were only two shots fired. This is testified to by all the witnesses, and there is no dispute or question to our minds in the evidence on this point. As stated, the testimony of Mr. Covert substantially raises the issue that he was asked to aid in the arrest of appellant. On this question he testifies as follows: "Stout came up and motioned to me about that time to stop Purdy and about that time I run back to Purdy and we got into it there. I told Purdy: I said, where are you going, fellow? He said, you get out of my way. I says no; where are you going? you have done something. He says no, get out of my way, something like that. I says no, you are not going to pass me. Just about that time he drew a gun out and snapped it at me twice that way. I struck at him twice; he went past me—went on around me." He also says that when appellant left him that he went and broke the fence to let Mr. Stout and Mr. Butler through so they could go after him. He further says: "I tried to reason with Purdy; said no use for you

to run, nigger, they will get you anyway." There was no evidence introduced on behalf of the defendant. He seems to have rested his case on the evidence adduced by the prosecution. The court in submitting the case to the jury submitted murder in the first degree, murder in the second degree, and self-defense. Manslaughter was not submitted, nor were there any instructions given in respect to the right of the parties, any or all of them, to arrest appellant, nor with reference to his rights of self-defense in resisting such arrest.

1. The main question and the only question of special difficulty presented by counsel for appellant is raised both by proper motion and also by certain requested instructions to the effect in substance that Mr. Butler had no right to undertake to arrest the appellant, and that if the jury should find that he was shot in an attempt to arrest him, that appellant would, under the facts, and the law, be entitled to act as in self-defense. Their proposition, as we understand, is that the facts in the case do not, fairly considered, raise the issue that Butler was summoned by the sheriff or by the constable, either or both, as an aid or one of the posse to help in the arrest of appellant. If this proposition were true, it must undoubtedly result that the case must be reversed for the failure of the court to instruct the jury touching the law growing out of this condition. In this connection appellant also submits that the test and criterion in determining whether Butler had been so summoned is as to whether under the facts, if he were charged with the failure to aid the sheriff, could he defend successfully on the ground that the summons was not such a one as rendered him, if he refused, subject to punishment? We do not think that this is a fair test. Rather we are inclined to believe that perhaps by analogy a safer test would be, would the deceased, if charged with unlawfully carrying a pistol, be protected in so doing under the facts, in that he had been summoned to aid in the arrest of appellant? The facts clearly show that the offense for which appellant was sought to be arrested had not only been committed in the view and presence of Stout, but was an offense committed against him. It is clearly shown that almost immediately thereafter appellant was seeking, while yet in Stout's presence, to escape. It is also shown that as soon as he could he telephoned Mr. Moore, the sheriff, substantially the facts, and sought his aid in securing appellant's arrest. The facts further show that after the sheriff responded to this appeal of his brother officer, that Mr. Butler came on the scene of action, but *outside of the fence* from Mr. Moore, the sheriff, and as Mr. Moore testifies, asked him what was the matter. This would indicate that Mr. Butler was not a mere interloper and was not advised of the purpose or mission of Moore or particularly of the need of aid and assistance. Thereupon he says that he told him that they were seeking to arrest appellant, pointed him out while yet in flight, and told him to tear down the

fence and come across. These facts taken in connection with the subsequent conduct of all the parties in acting together, their conversations, and joint efforts are all consistent with the fact and only consistent with the idea that Mr. Butler's aid was desired, his mission substantially stated to him, and that he was acting at the request of the sheriff and Mr. Stout in undertaking to effect the capture of appellant. We think that where one in a sudden emergency like this is induced to aid in the lawful capture of one armed to the teeth seeking to escape an arrest under facts justifying his arrest, that it would be an unsafe and dangerous doctrine to hold that his summons must be technically accurate according to the strictest letter of the law, but the true rule must be and is if in such emergency and haste, if while time presses with the escaping party in sight, the acts and declarations of those charged with the enforcement of the law are such as in reason and fairness to induce the conviction that aid is desired and as in substance to amount to a summons, that the law would but slightly concern itself with the particular character of the words used in effecting such summons. It must look to the substance and not to the letter of such summons. If this conclusion as to the weight of the testimony is true, it must follow, of course, that the chief contention of the learned counsel is without merit. That it is correct it seems to us a careful review of the facts demonstrate beyond doubt.

2. The next complaint relates to the charge of the court on the issue of self-defense. The particular paragraph pointed out is the sixteenth paragraph of the court's charge, but in order to intelligently and fairly pass on this contention, it will be necessary to consider this paragraph in connection with the one preceding it. The two paragraphs of the court's charge in respect to the law of self-defense are as follows:

"Homicide is justified by law and is no offense when committed in one's self-defense. This is the case when one is unlawfully attacked or assaulted in such a manner as to produce in his mind a reasonable expectation or fear of death or serious bodily injury, or when it reasonably appears to the party so attacked, from the acts of the person killed, that he is in danger of losing his life or suffering serious bodily injury, and in determining whether there was such danger or not, or whether it so appeared to defendant, it must be viewed from the standpoint of the defendant.

"No person who is unlawfully assaulted or attacked is bound to retreat in order to avoid the necessity of killing his assailant.

"Now, if you believe from the evidence that the defendant, John Purdy, shot and killed said M. F. Butler on or about the time and as alleged in the indictment, but you further find from the evidence that at the time he did so, the said M. F. Butler had shot the defendant, or had first made an assault on defendant or was in the act of making an attack upon the defendant with a pistol, then and

in case you so find the facts to be, or in case you have a reasonable doubt as to these matters, you will acquit the defendant, or in case you have a reasonable doubt whether the defendant in shooting said M. F. Butler, if he did, acted in his self-defense, you will acquit him and say 'not guilty.' "

Now, the complaint in the motion for new trial is that it is erroneous in that it does not affirmatively charge the law of self-defense, and again, that it is so badly erased and interlined that the jury could not read the same nor could this court read it, and that it practically takes away and obliterates from the consideration of the jury the court's charge on this subject. In the motion the trial court is requested in the event such motion is overruled that the original main charge of the court be sent up as a part of or with the transcript for the inspection of this court to the end that the error thus complained of may be fairly passed upon by us. We have not been furnished with the original charge as copied into the record. None of the objections as to its being erased or interlined appears, of course. The charge on self-defense is not subject to the objection that the law of·self-defense is not affirmatively submitted to the jury; nor are we prepared to concede that it is subject to any substantial objection. Indeed, it may be difficult to find any ground of self-defense in the evidence. The testimony makes it clear that only two shots were fired, and that the first of these shots was fired by appellant while resisting an arrest under circumstances that made such resistance of itself unlawful. The court below, however, has given the appellant the benefit of this issue in such manner as not to be subject to any objection made to it.

3. It is further urged that the court erred in not submitting the issue of manslaughter. We do not believe that manslaughter was in the case. There is no suggestion in the evidence that there was any purpose on the part of the officers to do anything more than to arrest appellant. There is no suggestion that they meant to do him any violence beyond the use of such force as might be reasonably necessary to his arrest. There was not a shot fired at him under the evidence until he had first shot Butler. After he was shot down he seems to have received necessary attention. He seems to have known both from what transpired before he started to escape and from the declaration of Mr. Covert that he was being pursued for the purpose of being arrested, and in view of the fact he was armed, his efforts to hide and escape, in view of the fact under the evidence that he had just committed a felony in his assault on Stout, the character of the country where he was at the time, we can find no fact in the record that shows that his arrest was sought in any manner inconsistent with a scrupulous and fair observance of the legal rights of the officers pursuing him.

There are no bills of exception in the record, and so far as we can see from a careful examination of the record the case seems to

have been tried with perfect fairness to appellant, and from our view of the facts there is no error in the charge of the court for which appellant can complain.

It is therefore ordered that the judgment of conviction be and the same is hereby in all things affirmed.

*Affirmed.*